# Hoffer *versus* Miller.

Mrs. Hoffer was owner of a tract of land, and during her life her husband ran a line in the presence of their two sons and with their consent, by which a portion of the tract was cut off and added to land of his own, making two farms of equal size, each son taking one, occupying it and recognising the line as their boundary, before and after their mother's and father's death, and making improvements.   In ejectment by a purchaser at sheriff's sale of the interest of one of the sons, *held*, that evidence of these facts was inadmissible.

ERROR to the Court of Common Pleas of *Westmoreland county*.

This was an ejectment by Daniel M. Miller against John Hoffer and Jacob Hoffer, for a tract of land described as containing 100 acres, more or less.   The land in dispute belonged to Jacob Shaffer, who devised it to his daughter, the wife of Andrew Hoffer, and died in March 1830.   In April 1834, Hoffer bought of one Bonbright about 75 acres of land adjoining the tract devised to his wife: she died in 1847, leaving two sons, the defendants. Andrew Hoffer died in 1859.   In 1860 the interest of Jacob Hoffer, one of the defendants, in his mother's land, was sold by the sheriff to the plaintiff, who brought this ejectment for its recovery.

On the part of John Hoffer evidence was offered, that " prior to the death of the wife of Andrew Hoffer, and after his purchase of the Bonbright tract, he ran a line by the consent and agreement of his two sons, Jacob and John, which was marked on the ground in their presence, and by which he laid off to Jacob 20 acres of the land devised to their mother and the tract purchased from Bonbright, and to John the residue of the land devised to their mother, containing an equal number of acres; that said line was agreed to by all the parties, and from that time the sons have occupied their respective portions so laid off, and each has made valuable improvements; that after their mother's death this line

[Hoffer *v.* Miller.]

was adopted by them, and agreed to as a division-line between them; and they have always held up to it, always recognising and agreeing to it as their boundary."

The court rejected the evidence.

There was a verdict for the plaintiff for an undivided half of the tract devised to Mrs. Hoffer.

The rejection of the evidence was assigned for error.

The name of the counsel of the plaintiffs in error did not appear in the paper-book. In the argument were cited Calhoun *v.* Hays, 8 W. & S. 127; Thorn's Appeal, 11 Casey 49; Darlington's Appeal, 1 Harris 430; McMahan *v.* McMahan, Id. 380.

*H. P. Laird*, for defendant in error.

The opinion of the court was delivered, January 18th 1866, by

Thompson, J.—There was no title in the defendants to the land in controversy until after the death of their mother in 1847, from whom it descended. After that time her husband, their father, was tenant by the curtesy until his decease, which took place in 1859. He had no authority to dispose of his wife's land by will, and so far as he attempted it, the act was a nullity. After the death of their mother, the defendants made no partition of the land, but continued to occupy it by the line laid down between them in 1835 or 1836. That line was made, not by the sons, for they had no title or right of possession as against their parents. It was made by their father, dividing his own estate and that of his wife, as if it were all held in his own right, but manifestly for the convenience only of occupancy by the sons. It did not divest her title in her farm, or that of anybody else. This line, thus established, had no effect as a partition therefore. That the defendants continued to occupy it after their mother's death, did not establish a partition of the property between them, when the plaintiff below obtained his judgments. What the effect of a continuous occupancy for a long period might be between parties under the circumstances of this case, it is not necessary to say; here it was continued only about two years before the plaintiff's lien attached, after the title descended. There had been no parol partition in the mean time, and, as already shown, the line made by the father was no partition. It was proper, therefore, to reject the offer of testimony by the defendants, for if admitted, it would have amounted to nothing.

Judgment affirmed.